UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| SHAWN SIMMONS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No. 4:14-CV-27-TWP-SKL |
| CHERRY LINDAMOOD, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

In 2009, Shawn Simmons ("Petitioner") was convicted of first degree murder by a Lincoln County Circuit Court jury, receiving a sentence of life imprisonment for the offense [Doc. 1]. Petitioner now brings this pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging the legality of his confinement under that judgment [*Id*.]. Warden Cherry Lindamood ("Respondent") has filed a response to the petition [Doc. 9], arguing that relief is not warranted with respect to Petitioner's claims and, in support of those arguments, she has filed copies of the state court record [Doc. 10]. Petitioner has failed to reply to Respondent's answer, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2.

For the reasons set forth below, the Court determines that no evidentiary hearing is warranted in this case, Petitioner's § 2254 petition [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

### I.  PROCEDURAL HISTORY

On March 25, 2009, a Lincoln County jury convicted Petitioner of first degree murder. *State v. Simmons*, No. M2009-01362-CCA-R3CD, 2010 WL 3719167, at *2 (Tenn. Crim. App. Sept. 23, 2010), *perm. App. Denied* (Tenn. Feb. 17, 2011). The trial court later sentenced him to

life in prison. *Id*. On September 23, 2010, the Tennessee Court of Criminal Appeal ("TCCA") affirmed the convictions and sentence and, in an order filed February 17, 2011, the Tennessee Supreme Court denied his application for permission to appeal.

On September 22, 2011, Petitioner filed a petition for state post-conviction relief. *Simmons v. State*, No. M2012-00987-CCA-R3PC, 2013 WL 1225857, at *1 (Tenn. Crim. App. Mar. 27, 2013). Following the appointment of counsel, an amended petition was filed. *Id*. A hearing on the matter was held and the post-conviction court denied relief. *Id*. On March 27, 2013, the TCCA affirmed the post-conviction court's ruling, and on September 19, 2013, the Tennessee Supreme Court denied Petitioner's application for permission to appeal. *Id*.

There followed this timely § 2254 habeas corpus application in which Petitioner alleges three claims: (1) ineffective trial counsel, (2) insufficiency of the convicting evidence, and (3) improper jury instruction [Doc. 1]. Respondent argues in her answer that the claims alleged were adjudicated by the state court and resulted in a decision which must remain undisturbed under the deferential review standards set forth in 28 U.S.C. § 2254 [Doc. 9]. The state court decision should stand, the Warden argues, because that decision is not contrary to or an unreasonable application of well-established Supreme Court precedent or an unreasonable determination of the facts presented to the state court [Doc. 9].

## II. BACKGROUND

The following factual scenario has been drawn from the facts contained in the TCCA's opinion on Petitioner's direct appeal.

> On February 3, 2008, a group of friends and relatives planned to gather at the home of Keith and Jana Buchanan in Fayetteville, Tennessee to watch the Super Bowl game. Rodney Howard, Mr. Buchanan's half-brother, Richard Askins, James Battle, Shevonta Love, and Stephen Whitaker all planned to watch the game at the Buchanan residence. Early in the afternoon, the partygoers were sitting in the house when [petitioner] and Angie Hill walked into the house. Ms. Hill is the sister of Mr.

Buchanan and Mr. Howard. Petitioner walked across the living room and asked Mr. Whitaker to see him outside. Mr. Whitaker followed [petitioner] out of the house. Mr. Whitaker came back shortly thereafter, and [petitioner] left.

Mr. Buchanan was agitated that [petitioner] would walk into their house without acknowledging either him or his wife. Soon thereafter, [petitioner] walked back into the house, telling Mr. Buchanan that he had "disrespected" his family for the last time. [Petitioner] added that Mr. Buchanan was no longer welcome in his home. [Petitioner] told Mr. Buchanan, "I got you" before he left the residence.

At that point, most of the people at the party left to go home and take showers prior to the Super Bowl game. After the game started, Mrs. Buchanan informed Mr. Buchanan that his sister called to tell them that [petitioner] was beating her.

The two brothers left the house, along with the three other men, in Mr. Howard's red Cadillac with twenty-two inch rims. The men left unarmed. On the way to Ms. Hill's house, they spotted Ms. Hill and her truck on the side of Hedgemont Avenue. [Petitioner] was standing next to Ms. Hill's truck, talking to her.

When they got close to the scene, Mr. Howard threw the car in park and got out. Mr. Howard threw his hands up in the air, demanding to know what was going on. They all wanted to know what was going on with [petitioner] and Ms. Hill. Mr. Buchanan also exited the vehicle and went around towards [petitioner]. At that time, a shot was fired that hit Mr. Buchanan. Ms. Hill exclaimed, "I can't believe you shot my brother, Shawn!" Mr. Buchanan was placed back in the car and driven to the hospital where he later died from a gunshot wound to the upper torso.

A witness living nearby called 911 and reported the incident. Police were dispatched to the area and witnessed [petitioner] walking down Wilson Parkway, about 250 yards from the crime scene. [Petitioner] began to walk faster when he saw the police and was seen lobbing an object onto the top of a building. [Petitioner] was wearing a glove on his left hand and holding a glove in his right hand.

[Petitioner] was subsequently arrested. When the area around the building was searched, officers located a .38 caliber revolver, one spent casing, and one unspent casing.

During the investigation, police located an empty gun holster at the home of Ms. Hill and a fanny pack that held shells similar to those used in the shooting. Ms. Hill had not given [petitioner] permission to use her weapon. Forensic tests determined that the gun found near the scene fired the shot that killed Mr. Buchanan. Additionally, [petitioner]'s shirt indicated the presence of gunshot primer residue.

*Simmons*, 2010 WL 3719167, at *1–2.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2254, *et. seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts, which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id.* at 411.

The § 2254(d) standard is a hard standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). The Supreme Court pointedly has observed, "AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 781 (2010). Further, factual findings

sustained by the record are entitled to a presumption of correctness and may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that he received ineffective assistance of counsel from his trial attorney. Within his claim of ineffective assistance of counsel, Petitioner raises the following five subcategories: (1) failure to call a witness; (2) replacement of counsel; (3) failure to sequester jury; (4) failure to object; (5) failure to file a motion to suppress.

The TCCA, applying *Strickland*, concluded that Petitioner had not met his burden of proving deficient performance or prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Thus, the task before the Court is to determine whether the state court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

### A. Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *See Strickland*, 466 U.S. at 687. Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance

5

of counsel must "identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. Here, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would have probably won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

B. **DISCUSSION**

1. **Failure to Call a Witness**

Petitioner alleges that his counsel's failure to call Jamie White as a defense witness constituted ineffective assistance of counsel [Doc. 1-1 p. 13]. Petitioner claims that Mr. White's testimony would have "bolster[ed] counsel's chosen strategic defense" *Id*.

Under *Strickland,* defense counsel has a "duty to make reasonable investigations" in preparation for trial or "to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *Shaw v. Perry*, 2017 WL 626606, at *7 (W.D. Tenn.

Feb. 15, 2017). A criminal defendant alleging prejudice from trial counsel's failure to properly investigate and present mitigating evidence must show that there is a "reasonable probability" that the mitigating evidence not presented would have changed the outcome. *Strickland,* 466 U.S. at 694. Addressing Petitioner's contention, that trial counsel rendered ineffective assistance by not calling Mr. White as a witness, the TCCA recounted the testimony given at the post-conviction hearing:

> However, Mr. White's testimony showed that he had a history of criminal convictions, and by his own admission, he was not likely a credible witness because he was dealing with his own criminal case at the time of petitioner's trial. Mr. White was not present at the scene of the shooting, and the only evidence he offered regarding petitioner's acting in self-defense was that petitioner told him that he had been in an altercation and wanted to "get away."

*Simmons*, 2013 WL 1225857, at *13.

The TCCA applied the two-part *Strickland* test to these facts and concluded that "Petitioner has failed to show that trial counsel was ineffective for failing to present the [ ] testimony of Mr. White or that he was prejudiced by the alleged deficiency." *Id*. Petitioner provided no reasonable probability that Mr. White's testimony would have changed the outcome of the case. *Id*. Based on Mr. White's questionable testament, it appears to be sound trial strategy to not call him as a witness because he would have provided no compelling support in counsel's chosen defense. In order to avoid second-guessing trial counsel's strategic decisions, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. (*citing Cooper v. State*, 849 S.W.2d 744 (Tenn. 1993)).

Based on the TCCA's analysis, this Court finds that Petitioner has not shown that he is entitled to relief under the AEDPA on this claim. First, the TCCA's determination was not "contrary to" *Strickland,* because the TCCA applied its two-part test to the facts. Second, the TCCA's ineffective assistance determination was not based on an unreasonable determination of

7

the facts or an unreasonable application of *Strickland*'s standards to those facts. *See* 28 U.S.C. §§ 2254(d)(1) and (2). The state court's determinations are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1), which Petitioner has not submitted.

Based on these supportable factual findings, the TCCA reasonably concluded that counsel did not perform deficiently by failing to call Mr. White as a witness. Because the TCCA's ineffective assistance determination was not unreasonable, Petitioner is not entitled to relief on this claim.

### 2. Replacement of Counsel

Petitioner argues that he received ineffective assistance because preliminary counsel was replaced with "attorneys who rarely met with petitioner, and if they did, it was for a short period of time." [Doc. 9 p. 19] [Doc. 1-1 p. 15]. Petitioner's original attorney, Buck, was replaced by attorneys Dearing, Harold, and Collins, whom Petitioner claims he did not meet until three days prior to trial [Doc. 1-1 p. 15]. Petitioner states that he met once with Harold, twice with Collins, and four or five times with Dearing prior to his trial [*Id.*]. He argues that it is "unreasonable for counsel to only meet with a client or communicate with a client for a short duration and expect a good result at trial [*Id.*].

The record contains evidence that attorneys Dearing, Harold, and Collins did, in fact, meet with Petitioner on multiple occasions and communicate a defense plan with Petitioner. [Doc. 9 p. 19, citing *Simmons*, 2013 WL 1225857]. These attorneys testified that they also met with Petitioner's preliminary counsel and received all of the information that she had regarding Petitioner's case. [*Id.*]. Although it is clear that Petitioner would have preferred to have been represented by preliminary counsel at trial, his preference for one attorney does not per se render

8

that counsel's replacement ineffective [*Id.*]. The post-conviction court determined that "trial counsel were adequately prepared and consulted with preliminary counsel while representing [Petitioner]" [*Id.*].

The Sixth Circuit has held that in the absence of a demonstration of prejudice, counsel's failure to meet with his or her client as often as the client wanted does not constitute ineffective assistance. *Stojetz v. Ishee*, No. 2:04-CV-263, 2014 WL 4775209, at *21 (S.D. Ohio Sept. 24, 2014), *Hill v. Mitchell*, 400 F.3d 308, 324-25 (6th Cir. 2005) (Hill has given us no explanation how additional meetings with his counsel, or longer meetings with his counsel, would have led to new or better theories of advocacy or otherwise would have created a 'reasonable probability' of a different outcome.). The Sixth Circuit has held that the mere fact that counsel spends little time with a defendant is not enough under *Strickland*, without evidence of prejudice or other defects. *Bowling v. Parker*, 344 F.3d 487, 506 (6th Cir. 2003).

The TCCA found that Petitioner had not shown that trial counsel were deficient for replacing preliminary counsel or that their replacing preliminary counsel prejudiced him. *Simmons*, 2013 WL 1225857. Nothing Petitioner has presented to this Court demonstrates that the TCCA unreasonably determined this conclusion. The TCCA properly applied the appropriate *Strickland* standard based on the facts of the case, and thus, Petitioner is not entitled to relief on this claim.

### 3. Sequestration of Jury

Petitioner claims that counsel was ineffective when he failed to sequester the jury [Doc. 1-1 p. 16]. Contrary to what counsel testified to, Petitioner asserts that counsel told him that the jury would be sequestered [*Id.*]. Four members of the jury admitted to reading newspaper articles regarding the trial [*Id.*]. Two of those four jurors were excused and the other two were allowed to

9

remain and serve as jurors because they only read the article headline [*Id*.]. Petitioner asserts that he was prejudiced by the jury not being sequestered and insisted that counsel acted unreasonably by misleading him to believe that the jury was sequestered [*Id*.]. Petitioner further claims "the outcome of the trial would have been different if the jury had been sequestered" [*Id*.].

In addressing this claim, the TCCA correctly articulated the standard established by *Strickland* and concluded that Petitioner failed to show deficient performance and prejudice regarding the jury not being sequestered. *Simmons*, 2013 WL 1225857, at *14. The Court stated:

> . . . The post-conviction court agreed with trial counsel one's testimony that there was no need to sequester the jury and found that petitioner failed to show that he was prejudiced by trial counsel's failure to move to sequester the jury. Petitioner has not shown that trial counsel's tactical decision to not seek sequestration of the jury was unreasonable or deficient.
>
> . . . The post-conviction court found that petitioner did not present adequate proof that a mistrial was warranted based on the jurors' reading the newspaper and agreed with trial counsel's testimony that it would have been frivolous to pursue the issue on appeal. When trial counsel one discovered that some jurors had read the newspaper, he brought it the attention of the court and moved for a mistrial. Upon questioning from the court, it was determined that two jurors read the article and that two only read the headline. The two jurors who read the article were dismissed from the jury. Petitioner did not present any proof that the two jurors who read only the headline of the article were tainted or that they contaminated the remaining jurors. Thus, petitioner has failed to show deficient performance and prejudice regarding the jury's not being sequestered. This issue is without merit.

*Id.* at *14.

The state court's application of the *Strickland* standard was not unreasonable, nor was its conclusion that counsel's performance was not deficient. The state court's conclusion that Petitioner failed to prove prejudice was also reasonable. As such, Petitioner is not entitled to relief on the basis of this claim.

####          4.      Failure to Object

Petitioner claims that counsel was ineffective when he failed to object to the prosecutor "using charges that were dismissed at the preliminary hearing against the Petitioner at trial" [Doc. 1-1 p. 18]. "Specifically, he complains that there was testimony that he stole the murder weapon and claims that this evidence was improper because the theft of a weapon charge was dismissed" *Simmons*, 2013 WL 1225857, at *14. Petitioner makes the general argument that counsel's performance was deficient and highly prejudicial to his case [Doc. 1-1 p. 18].

As noted by the post-conviction court, the evidence that petitioner took the murder weapon without permission from where his girlfriend kept it was highly probative of petitioner's intent and premeditation. *Simmons*, 2013 WL 1225857, at *14. Further, trial counsel testified that he made a tactical decision not to object to the testimony regarding petitioner stealing the gun used to shoot the victim because petitioner's girlfriend, a defense witness, was the person who offered the testimony. *Id*. This Court agrees with the state court's decision not to second-guess tactical and strategical choices pertaining to defense matters and, in doing so, finds that TCCA both identified and reasonably applied the controlling *Strickland* standard to find counsel's decision not to object was neither deficient nor prejudicial. Accordingly, Petitioner is not entitled to relief on the basis of this claim.

####          5.      Failure to File a Motion to Suppress

Petitioner claims that counsel was ineffective for failing to file a motion to suppress his statements to law enforcement officers [Doc. 1-1 p. 18]. Petitioner alleged that after he was given his *Miranda*[1] rights, he asked for an attorney but the police continued to question him [*Id*.]. Petitioner included a DVD tape as an exhibit to his petition, which he claims shows him asking

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

for an attorney, twice, before the police questioning ceased [*Id*.]. Petitioner argues, "[t]rial counsel was well aware of this situation and failed to file a motion due to the statements being 'self serving'" [*Id*.]. The TCCA addressed this claim stating:

> The post-conviction court determined that petitioner was given his *Miranda* rights and that once petitioner made an unequivocal request for an attorney, the police stopped questioning him. The court further noted that there was no evidence that petitioner was intimidated, coerced, threatened, or otherwise induced into making a statement.

*Simmons*, 2013 WL 1225857, at *14.

Furthermore, the TCCA reasoned that lead trial counsel testified that it was his strategy to have the statement admitted as a way to get Petitioner's theory of self-defense before the jury without Petitioner testifying and being subjected to a rigorous cross-examination. *Id*. Thus, the TCCA held that Petitioner's trial counsel had not rendered ineffective assistance of counsel because his decision not to file a motion to suppress Petitioner's statements to the law enforcement officers constituted a trial strategy and such a strategy was reasonable in the eyes of the court. *Id*.

In sum, Petitioner's claim that his counsel was ineffective for failing to file a motion to suppress his statements to law enforcement offices was rejected by the TCCA on the basis of the first prong of Strickland, and the record fully supports this conclusion. This Court concludes that the TCCA's decision is neither contrary to clearly established federal law nor an unreasonable application of clearly established federal law and that Petitioner has failed to identify any evidence to overcome the presumption of correctness that must be accorded to the state courts' factual determinations. *See* 28 U.S.C. § 2254(e)(1). Accordingly, Petitioner is not entitled to relief on the basis of this claim.

## V. Insufficient Evidence

Petitioner contends that the evidence produced at trial was insufficient to support a conviction for first degree murder because it was "highly circumstantial" [Doc. 1-3 p. 2]. Petitioner sites to *State v. Crawford*, 470 S.W.2d 610, 613 (1971) stating that "in order to convict on circumstantial evidence alone, the facts and circumstances must be so closely interwoven and connected that the finger of guilt is pointed unerringly at the defendant and the defendant alone." Here, Petitioner argues that the facts and circumstances of his mental state are not so closely interwoven, and thus the jury erred by finding him guilty [Doc. 1-3 p. 2].

### A. Applicable Law

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling authority for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for all claims of insufficient evidence, *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct 2148 (2012)). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matter, which lie within the province of the trier of fact. *Id.*; *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)).

A habeas court reviewing an insufficient evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the fact finder's verdict. *Cavazos*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

**B.     Discussion**

Petitioner's argument focuses on the lack of direct evidence implicating him for first degree murder and asserts that the circumstantial evidence was insufficient to support a conviction [Doc. 1]. However, "[c]ircumstantial evidence may support a conviction, and such evidence need not remove every reasonable hypothesis except that of guilt." *Apanovitch v. Houlk*, 466 F.3d 460, 488 (6th Cir. 2006). Indeed, the Supreme Court has explained that circumstantial evidence is "intrinsically no different from testimonial evidence," and that both "may in some cases point to a wholly incorrect result." *Holland v. United States*, 348 U.S. 121, 140 (1954). "Yet . . . [i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Id.* at 137-38. To accomplish this, "the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008).

The evidence against Petitioner was substantial, even if arguably circumstantial. There was testimony that Petitioner told the victim that he had "disrespected" his family for the last time. *Simmons*, 2010 WL 3719167, at *4. Petitioner also told the victim, "I got you." *Id*. There was also evidence that immediately after the murder, Petitioner walked away from the scene and lobbed something onto the roof of the building. *Id*. The murder weapon was later found in a location consistent with being thrown onto the roof of the building and later sliding off. *Id*.

Based on the evidence presented in the trial court, direct and circumstantial, the Court finds that there was sufficient evidence for any rational trier of fact to have found the essential elements of Petitioner's crime beyond a reasonable doubt. Thus, it was not unreasonable for the state court to conclude under the *Jackson* standard that, weighing all reasonable inference in the State's favor, there was legally sufficient evidence presented to establish Petitioner is guilty of first degree murder. This Court cannot find that the decision was unreasonable nor was it based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on this claim.

## VI. Flight Instruction

Lastly, Petitioner asserts that he was denied a fair trial because the trial court issued a jury instruction on flight and the inferences that might be drawn from evidence of flight [Doc. 1-3 p. 4]. Plaintiff argues that there is no evidence to support a charge of flight and thus the trial court erred in its instruction [*Id*.].

Respondent claims procedural default of the type involving a failure to present a claim as a violation of a federal constitutional right, but only as a state law violation [Doc. 9 p. 25]. Respondent argues that Petitioner failed to allege that he was actually subjected to any clearly

identifiable and specific federal constitutional violation, and thus does not state a cognizable federal habeas claim [*Id*. at 28].

### A. Applicable Law

To avoid procedural default, a claim must be offered to a state court on a federal constitutional basis – not merely as one arising under state law. *Standford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)). There is no general federal right to a properly instructed jury. With few exceptions, the substance of jury instruction frames a matter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 70–72 (1991). Consequently, a federal court may grant habeas corpus relief based on errors in state jury instructions only in "extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007) (citing *Lewis v. Jeffers*, 497 U.S. 762, 780 (1990)). A habeas court may not grant relief on the basis of an allegedly erroneous instruction on evidence merely because it disagrees with the instruction. *Estelle*, 502 U.S. at 72. The only question in habeas corpus is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. (*quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *accord Waddington v. Sarausad*, 555 U.S. 179 (2009). Unless a habeas petitioner can demonstrate that an instruction deprived the trial of "fundamental fairness," the validity of the instruction is a matter of state law. *See Estelle*, 502 U.S. at 72–73.

### B. Discussion

In agreement with Respondent, this Court finds that Petitioner pressed his flight instruction claim on the state courts as a violation of state law and not as a violation of his constitutional rights. This constitutes a procedural default. Notwithstanding, Petitioner is unable to show that the flight instruction was erroneous in any way, let alone that it undermined the fairness of his trial.

In order for a trial court to charge the jury on flight as an inference of guilt, there must be sufficient evidence to support such instruction. *Simmons*, 2010 WL 3719167, at *4. There is sufficient evidence to support a jury charge on flight where there is proof of both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or leaving the community for parts unknown. *Id*. Contrary to Petitioner's argument, the TCCA determined that there was arguably enough evidence of flight to fairly raise the issue for the jury's determination. *Id*. This Court cannot find that the trial court's decision to instruct the jury on flight was improper given the facts of this case.

The TCCA further noted that even if it was error for the trial court to give the flight instruction, such error was harmless beyond a reasonable doubt. *Id*. The TCCA stated:

> [T]he trial court herein instructed the jury that whether the defendant fled was a question for its determination and that flight alone was not sufficient to find the defendant guilty. The overwhelming proof of Appellant's guilt renders any error in giving the flight instruction harmless. *See also State v. Willie Hall*, No. W2008-01875-CCA-R3-CD, 2010 WL 57190, at *9 (Tenn. Crim. App., at Jackson, Feb. 18, 2010) (determining that even where proof was "tenuous" of defendant's flight, the trial court's decision to give the jury an instruction on flight was harmless in light of the overwhelming evidence of defendant's guilt).

*Simmons*, 2010 WL 3719167, at *6.

Based on the reasoning set forth above, this Court finds that, not only does the allegation fail to state a cognizable federal habeas claim because it fails to specify any federal constitutional violation, it also fails to show any error in the trial court's instruction of flight. This Court further finds that the state court's decision was not contrary to or an unreasonable application of federal law, nor was it an unreasonable determination of the facts. Thus, Petitioner is not entitled to relief on the basis of this claim.

## VII. CONCLUSION

For the above mentioned reasons, the Court finds that Petitioner's claims do not warrant the issuance of a writ of habeas corpus. Therefore, Petitioner's petition for a writ of habeas corpus will be **DENIED**.

## VIII. CERTIFICATE OF APPEALABILITY

The Court must also consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if issued on COA, and a COA may only be issued where a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 253(c)(2). Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude the issues raised are adequate to deserve further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been dismissed on procedural grounds, a substantial showing is demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists would not conclude that Petitioner's claims are adequate to deserve further review. As such, because Petitioner has failed to make a substantial showing of the denil of a constitutional right, a COA will not issue.

**AN APPROPRIATE ORDER WILL FOLLOW.**

ENTER.

                                               s/ Thomas W. Phillips  
                                               Senior United States District Judge